Number 22-12518. Mr. Sires. Good morning. It's nice to have the three of you in South Florida and may it please the court.     Thank you. Thank you. Thank you. In the course of entering summary judgment against Baer's Furniture, the district court improperly adjudicated several issues of fact. As background, and I won't belabor it because it's in our briefs, Baer's Furniture, as the three of you probably know, is a large furniture retailer in South Florida or throughout Florida and it places advertisements through various channels, including through, at the time, Comcast. And those advertisements are carefully selected by Baer's to reach a particular audience which is largely female of a 39 to 54 year age range. And that's important to it. Can I ask you a question? Because you're going to be limited in time, Mr. Sires. I understand the argument that the district court sort of made factual determinations improperly in your view about what Mr. Baer signed and what, if anything, those signed documents pertain to. Yes, sir. I understand the argument and I understand the record basis for the argument. But I have this question, and maybe there's an answer, maybe there isn't. If the agreement that Comcast appended to the, let me get the names right, the terms and conditions that Comcast appended to the Certificate of Completion are not the terms that govern the relationship between Comcast in all the regions of Florida, where in the record are those agreements? And the agreements, Your Honor, are the so-called insertion orders or schedules that we have in the record, each of which shows a particular channel, a particular day of the week or days of the week and time periods when those advertisements will be run along with the ratings estimates from Nielsen. There need not be a separate further agreement. In fact, for many, many years... And those set out all the terms, including the cost paid for each one of the spots and everything else? Yes, sir. And in fact, for many, many years Baer's and Comcast did work based on oral agreements because the gist of it is this is the schedule that we want you to run and they run it and they pay for it and they do that, they reach this agreement toward the end of each calendar year for the following year. So there is a dispute which was not resolved by Judge Cannon and it's not necessary to her holding at least with the terms and conditions as to whether this was a spot contract or a points contract, and there's a significant difference between those. When you contract for a spot, you're basically saying ratings points don't matter. I pick Monday night between 8 and 9 on CBS. When you contract for ratings points, you're contracting to run an ad during a particular time with a Now that is relevant potentially to the fraud issues that I'll get to but with regard to the terms and conditions Let me just go back for one second and help me on this question of whether Mr. Baer signed the terms and conditions. In his statement of undisputed fact, Comcast stated that quote, Jerry Baer signed the advertiser terms and conditions on November 11, 2016 on behalf of the plaintiff and Baer's responded undisputed. Does that not resolve the issue? It does not Your Honor, and to be totally open with the panel when we were working on the appeal and we saw that our reaction was what could have been entered more stated more elegantly What was intended there is that he had in deposition been shown that certificate of completion and said, I don't recall this document I don't remember signing it but that is an electronic signature that looks like mine and I have no basis to dispute it. Now the terms and conditions there's no evidence that they were both submitted to Mr. Baer at the same time there's no indication that they were part of one agreement in fact what's interesting is that Judge Cannon despite ruling of the terms and conditions applied made a finding that the terms and conditions had been signed there is no signature on the terms and conditions terms and conditions do not refer to the certificate of completion the first document that was actually signed nor does the first document that was signed which is called certificate of completion refer to the terms and conditions and what's interesting is that this is an inconsistency within the district court's order we argue that if you do find that these terms and conditions apply or were signed as a contract then there's a question as to whether they were intended to apply as Mr. Baer testified would have just applied to the west coast of Florida versus the totally different geographic regions of the east coast which is the contracts at issue in this appeal What was the evidence on Comcast's side of the ledger with regards to how the certificate of completion interacted with the document called the terms and conditions their legal position is that it's part and parcel of it and that it governs the relationship as a evidentiary matter Judge Jordan there is no basis there is nothing in the record from a Comcast representative saying these documents were attached when we presented it to Mr. Baer these were given to him at the same time in fact it's really apparent from the record that the documents don't even go together one is dated October the certificate of completion is November if you look at the terms and conditions I doubt it was even the same contract that was presented it's got all sorts of computer signs and glitches it looks like something that was printed up after the fact the only connection between those two is that they were produced together but that of course is not evidence that they were provided together and so what I was saying about the interesting thing about Judge Cannon's ruling here is that we said alright if you alternatively decide that the terms and conditions were part and parcel of the certificate of completion and thus govern then there is an ambiguity that you have to resolve because the certificate of completion says very clearly West Florida 2017 and that's what Mr. Baer said that's what Ms. Perpich who's the signatory to Comcast it says annual 2017 agreement dash WF right and we said well that certainly is an indication that this contract was intended if the terms and conditions were effective is intended to apply to that area that contract as they operated separately at Comcast Judge Cannon and this is I think an issue with her order said the terms and conditions were signed by Mr. Baer but if I were to look outside of that contract to the certificate of completion which is a thing that actually was signed and it says 27 so she termed the certificate of completion she turned that to be extrinsic evidence so going back to Judge Marcus's question do I wish it had been stated more clearly that what was being undisputed is that his signature was on that document? The problem that you have though is there's no caveat there's nothing that flows afterwards just undisputed in response to the assertion that I read you would have us read a whole lot more into it based on some other materials your honor this is our approach to that and how we dealt with it because frankly we said we wish we had said something more than just undisputed but if you go to the law of the 11th circuit a Seeley case it makes clear that a rule 56 .1 statement is not an evidentiary matter that resolves an issue and that the court has an obligation to at the least look at the evidentiary support for that contention and the only evidentiary support that Comcast cited for that contention was Mr. Baer's testimony that he didn't recall signing the certificate of completion but that he couldn't deny that it was his automatic signature. Your other alternative I don't know if it's fallback alternative whatever you want to call it is that that stipulation admission whatever it is only gets Comcast so far because you still have to figure out what the terms conditions apply to and your view is at most they apply to the west coast of Florida the Sarasota market but not Miami Fort Lauderdale and West Palm Beach. Correct Your Honor and the decision that it applied to everything is a was a issue of fact you know the making of a contract and the intent of the parties are all questions of fact that were improperly resolved. We have another contractual argument before we get to the independent tort document very briefly given my time when Baer's discovered that Comcast had failed to run the ads with the ratings that it had stated it threatened to sue Comcast and as a result of that the parties entered into a quote shortfall agreement. Judge Cannon ruled that there was no consideration for that agreement she acknowledged that foregoing legal actions is consideration but that we had not Baer's had not informed Comcast that it was so doing. I don't understand that finding because the record before her and before you shows including from testimony of Comcast's employees that Mr. Baer in fact did say if you do not make up these points if you don't make up for what your admitted failure then I will sue you as a result of which Comcast entered into an enforceable contract which basically said we will make up the points they even computed the number of points that had not been delivered and we will do so for free and that's a fully enforceable contract and the record also shows that the Baer's and Comcast performed that contract for nine months and all of a sudden what happens is a gentleman named Mr. Runge a new Comcast is always in a organizational shuffle and when a new officer came on a new vice president Mr. Runge he admitted very forthrightly in that position I terminated the contract not because it was undoable not because the Baer's had failed to perform but because I never thought that agreement should have been entered into in the first place so there clearly was a shortfall agreement and so the question is the question then becomes well is that agreement also subject to the terms and conditions and it clearly is not because the terms and conditions even if they were signed even if they apply to non-West Coast agreements apply only to what's defined as insertion orders which are the schedules that were typically entered into every year. The shortfall agreement which is evidenced by correspondence and performance are not an insertion order they're not they look nothing there's not a schedule like there is every annual year so clearly this was an agreement by which the parties intended to resolve their disputes and so it is in any event not subject to the terms and conditions even if those applied to other contracts and finally if I may I know I'm out of time but the independent tort doctrine we think the court made a bad decision on that we're aware of the law of some life which is the case principally cited Judge Lagoa just less than two months ago and the members of the team case addressed the issue by first of all the statement that was made to bears and it's undisputed that they were provided with ratings estimates and said these are estimates based on Nielsen. They argue the points are irrelevant we were not required to run the contracts based on points. Well by doing that they put themselves in a corner because that's an admission that performance of the contract is irrespective of points. What their officers admitted was that even though the contracts are not we have to show these points we give them the point information so that somebody like us can select which spots it wants to run so in other words we're making this representation to induce you into picking these particular spots so we think in any event representation that is false as to these are Nielsen ratings points is separate and independent from any performance of a contract to run things on a particular time particular points. Thank you. Thank you very much. Thank you. Ms. Plasencia. Good morning. May it please the court. My name is Rebecca Plasencia from Holland and Knight and along with my partner Annie Marie Gamis we represent the Appley Comcast cable communications management LLC. Your honors the court should affirm the summary judgment order entered by the one of the purported issues of fact that the appellant raises here actually changes the outcome of this case or takes this case out of the statute of limitations. Let me tell you where I think for me there's at least a potential problem for you. If you assume everything that the district court said being correct the shortfall agreement if there's consideration for it comes after the terms and conditions it's a separate agreement. It can't be governed can it by the hundred and twenty day suit limitation. It absolutely could and in addition there was an alternative reason but for the shortfall letter if you look at the allegations of the second amendment complaint where their claims for breach of this purported shortfall agreement it's referencing specifically the 2017 and 2018 schedules for the West Palm Beach and the Miami Fort Lauderdale DME the designated market area the schedules for those and it's basically saying based on the underperformance and if you look at the damages that bears named it's one set of damages for all of the claims and it's basically all the same that this shortfall letter and it's in their statement of undisputed facts where the again the only duration of damages that bears created below it says that their damages for the shortfall agreement were $936,000 which number was reached by multiplying the still undelivered points times the cost per point pursuant to the 2017 and 2018 agreements so the shortfall letter if anything even assuming that it's supported by consideration if anything it's just a modification in terms of a payment provision of what bears was saying was owed to it under these two prior schedule under the four prior schedules excuse me for the 2017 and 2018 DME so the conduct is basically all wrapped in one but in addition the shortfall letter putting aside whether the terms and conditions apply putting aside the consideration the shortfall letter itself what they're claiming makes up this shortfall agreement is February 2019 letter that says Comcast will endeavor to run advertisements free of charge there is nothing in here first of all that actually even references West Palm Beach there's nothing in here in terms of time parameter there's no essential term of of exactly what Comcast is obligated to do what does that mean Comcast will endeavor to run well there's there's a there's some evidence in the record indicating that Comcast initially told bears that it was going to run free advertisement until it eliminated the deficit the shortfall whatever you want to call it and there's no way to put a time limit on that because you don't know how the rating points are going to work depending on how Comcast runs the ads yes if Comcast runs a million ads a day then the points are going to be eaten up a lot of a little bit faster and if they do it once a month then it'll take a longer period of time right and that's that's the problem with with this shortfall letter because what exactly is Comcast obligated to do are we supposed to but was wasn't Comcast actually proceeding under the shortfall letter they did run advertisements free of were they doing that just out of the goodness of their heart or why were they doing it basically it was it was a sales issue it was trying to appease an unhappy client with whom they had a relationship for a long time and so they're like okay we'll try to make this work but again that's that's where the illusory promise comes in didn't mr. but didn't mr. bear testify that he threatened to sue if Comcast didn't come through with providing free advertising to make up for the problems that had existed that was mr. bears testimony we have to take that at face value at summary judgment yes but again that just goes to whether the shortfall isn't isn't that consideration it would be consideration that would go to them so then by definition judge canon erred on that issue no actually because under Florida law your honor for it to be valid consideration the forbearance of a legal agreement two prongs have to be met number one is bears has to have communicated its forbearance to the other side but Comcast first and foremost had to have requested don't sue me and we'll do this and bears couldn't present any evidence in the record of actually either prom even though the first the first prong is mr. bears testimony right but he didn't testify that he communicated his forbearance in exchange for he's like that that was the actual agreement being made but again taking out the consideration that let's assume for the sake of argument that there was valid consideration here it still doesn't make this shortfall letter an enforceable agreement because there is no there are no essential terms contained in this how is Comcast supposed to perform what exactly is the obligation what does a good faith endeavor look like are we gonna try for a certain amount of time are we going to bump paying customers but that is a determination of maybe maybe I'm just dividing things in a way that's too linear but isn't that a merits issue about the shortfall agreement claim as opposed to your barred under the statute of limitations set forth in the terms and conditions well this would be the separate argument of of putting aside the terms and conditions and its statute of limitations does this shortfall letter contain the essential terms and it doesn't that's so separate and apart from the terms and conditions we have the lack of an enforceable agreement we just have an illusory promise and I do want to go back quickly your honors to the terms and conditions because again as as this court has already pointed out not they did say that it was undisputed below that Jerry bears sign the terms and conditions in response to our statement of undisputed facts but in addition to that in their reply in bears reply to its own cross motion for summary judgment which was a docket 82 below and it's in bears supplemental appendix at 48 the very first sentence of one of their sections starts and this is bears saying this the terms and conditions that Mr. bear signed on November 11th 2016 so it was always undisputed below that the terms and conditions had been signed and that was not an issue that is properly before this court it shouldn't be in addition to that this argument of the terms and conditions not applying to what they're calling the east Florida markets right the West Palm Beach and the Miami Fort Lauderdale DMAs it's not a reasonable inference that can be drawn from this evidence first the language of the terms and conditions is is universally applied there is no geographic limitation it specifically says in the very beginning these are the terms and conditions under which Comcast will distribute advertisements via linear spot cable and then it defines contract this contract shall mean these terms and conditions together with any insertion order that the parties may enter into from time to time the problem is that documents not signed it was signed that document is not signed so it was always understood below it was Mr. bears testimony it's in his opposition to our motion for summary judgment that the certificate of completion was just it's just the electronic cover sheet to the terms and conditions in fact if you actually look at that certificate of completion and you look at I believe it says document pages says the number eight one for the certificate of completion seven pages for the terms and conditions if why does it have the label WF on it so of Fran Perpich who was an account executive in the West Florida office was at the time not only sending out the terms and conditions she was going to start negotiating the insertion orders for the West Florida market now insertion orders are negotiated market by market but any account executive and this is another point that the district court made that bears couldn't prove that Fran Perpich didn't have the authority to enter the terms and conditions on behalf of Comcast generally in fact you know the terms and conditions are not they're not updated every year but whenever they're updated they just need to be they just need to be issued by someone so that they're back on file before the new round of insertion orders start getting start getting negotiated but that was a point that the district court made in her in her order that that so what if it basically it was a so what that it says WF because you didn't prove that she didn't have the authority to enter into this on behalf of Comcast generally in fact again if we're so hung up on on the certificate of completion and what it says it actually shows that the document originated in in the Philadelphia office when it says envelope originator but again we don't even need to get into the weeds of that because the terms and conditions themselves are unambiguous and they don't actually allege they never argued that the terms and conditions were ambiguous the introductory clause is very clear the merger and integration clause says this contract and again contract defined as these terms and conditions together with any insertion order this contract is the entire agreement between the parties relating to the subject matter hereup and subject matter again go back to the introductory paragraph of the terms and conditions the subject matter is Comcast's distribution of advertisements via linear swap cable so their argument that the terms and conditions don't apply to West Palm Beach and to the Miami Fort Lauderdale DMA's and that instead those schedules are governed by oral agreements it just wasn't a reasonable inference not only in light of the language of the terms and conditions but as the district court noted they're saying these schedules are governed by oral agreements but what are these oral agreements? When were they entered into? With whom? What were the terms? What was the verbal testimony through affidavit deposition or otherwise of Comcast representatives about the interrelationship between the certificate of completion and the terms and conditions? I'm so sorry I don't recall if one of them did any Comcast person testify about how it was that these two documents merge with each other were part of the same thing when they were executed when they were signed for example Fran Burbage I negotiated this agreement these terms and conditions with Mr. Bair I did so on behalf of the company for the entire Florida market that is a general document that doesn't have any signature lines and that's because the signatures are contained in the certificate of completion which I sent to Mr. Bair right after we agreed he put his electronic signature sent it back to me and everything together constitutes the contract between the parties where am I going to find that in the record? You won't. Bairs didn't ask those questions in the depositions because Bairs always admitted below that it was... You moved for summary judgment nothing prevented you from putting an affidavit in the record correct but they had never challenged the issue they had acknowledged that they had signed the terms and conditions the first time we ever heard that the terms and conditions weren't signed was when they filed their initial brief that was never raised below the initial brief in this court correct your honor right because they never challenged the issue they themselves used it as in support of their own cross motion for summary judgment and I know that I'm running short on time so I do want to get briefly into the independent tort doctrine and the fraud claims and the independent affidavit putting aside whether the terms and conditions apply to those you could go allegation by allegation in the second amendment complaint and it's very clear that the fraudulent inducement claims are interwoven with the contract claims but more importantly the damages are exactly the same to get out of the independent tort doctrine Bairs would have had to have established that the damages for the fraud claims were separate and distinct from the contract claims and they never did that in fact again in their statement of undisputed facts there's only one single iteration of damages and it's all lumped together it is all the same it's what their damages are for the purported failure to deliver certain ratings points so on that ground alone the independent tort doctrine applies in addition to the terms and conditions applying to all of these claims to bar their claims for all of these reasons your honor we respectfully request that this court affirm the summary judgment thank you your honor thank you very much I think to emphasize what we all heard from counsel in response to Judge Jordan's question there is no evidence that the terms and conditions were even at any time stapled to each other when presented to Mr. Bair but part of the part of the answer for that may be that they asked you they put in a statement of alleged undisputed material facts you responded in a certain way and at least the way Judge Cannon seems to have understood your position in the district court was that you did not dispute that Mr. Bair signed the terms and conditions but that you argue that they only applied to the West Florida markets is that a misreading of your position in the district court no it's I would go a little further and say for example in our opposition to the summary judgment motion we did discuss the fact there's no evidence about the execution of the terms and conditions and so clearly we all agree that the quote terms and conditions are not signed that's undisputed so the only way they could be deemed assigned would be if they were part and parcel of the certificate of completion as Judge Jordan said there's no evidence to that anywhere in the record Frank Perpich didn't testify to that nor did anybody from Comcast say hey by the way this is how we did this we have to live with you know candidly our response to undisputed fact one and the intent how do we discard that is my question your honor the law is very clear even on a summary judgment motion that's unopposed the summary judgment can only be granted if the evidence establishes an undisputed fact even if there's no opposition so stipulations of fact are worthless on summary judgment is that your view and if the parties agree to the following 10 facts your honor we just bear with me I wasn't quite finished the parties agree to the following 10 facts in the case and they are material they bear directly and immediately upon the issue unless there is independent evidence in the record to otherwise support and sustain those findings of fact a district court is barred from considering those facts as being undisputed in asking the basic question of whether there are material issues in dispute that is correct your honor that's actually the law this is from the 11th circuit's opinion in the Reese case which we cite 527 F3 the movement is not absolved of the burden of showing that it is entitled to judgment but again let me have the full citation on that if you would yes it is Reese and I will get you the entire case name but it may be found at 527 F3 1253 and the pin site is 1268 and it's cited in our papers in our reply brief and your honor the court there said the movement is not absolved and it says a local rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported by the record and then it goes on to say after deeming the movement's statement of undisputed facts to be admitted pursuant to local rule 56.1 the district court must then review the movement's citations to the record to determine if there is indeed no genuine issue of material fact so candidly I wish we been clear and said we're admitting to the signature and not the fact these two were documents together but the law is still that 56.1 stipulation doesn't get you very far if there's no underlying evidence to the record and I know I'm over my time I had more to say but you've got 30 seconds to wrap up if you'd like. Thank you your honor and so as far as the terms and conditions if they were to apply whether they apply to other contracts that is a question of fact Judge Cannon said well I'm going to look and see some of these schedules the contracts for example one in West to the terms and conditions on file the problem is that the one she cited is not executed by in making the point is the one that was actually signed for that same year omits that language of reference so that the further indication that these terms and conditions were not intended to apply to Palm Beach and lastly on the intentional you know the independent tort doctrine saying these are ratings estimates by Nielsen is not the same thing as saying you promised to run these ratings numbers and then you fell short of that that's even more so if their position they can't have it both ways if they say these contracts had nothing to do with ratings points they had to do with time and channel and date well in that case ratings points were not part of the performance her argument as I understood it at least here at oral argument I'm not trying to summarize the entire argument from the brief is that you're seeking the same contractual damages damages flowing from the contract so they're not separate and apart from the contract by definition your honor brought in the inducement does not you don't recover damages for a in the sense that you don't enforce the contract the fact that the damages are the same is because it happens to be that the ratings points under our vision under our version if our version is correct then they fell short of their ratings points okay Mr. Sires we've got your argument I think thank you both very much I appreciate the court's time thank you